REQUESTED BY: Loren L. Lindahl, Saunders County Attorney, Wahoo, Nebraska
1. Are county extension services, which have the right to receive support from public revenues, public bodies subject to the provisions of the public meetings law?
2. Are county agricultural societies or county extension services subject to the budget limitations set forth in Neb.Rev.Stat. §§ 77-3412 to 77-3430 (Reissue 1981)?
1. Yes, based on the Nebraska Supreme Court's recent decision in Nixon v. Madison County Agricultural Society,217 Neb. 37, 348 N.W.2d 119 (1984).
2. No, neither entity constitutes a `governing body' of a `political subdivision' as required by the provisions of the Political Subdivision Budget Limit Act.
1. Your initial question is prompted by the recent Nebraska Supreme Court decision in Nixon v. Madison CountyAgricultural Society, 217 Neb. 37, 348 N.W.2d 119 (1984)Nixon, in which the Court held county agricultural societies are public bodies subject to the provisions of the public meetings law. In reaching this decision, the Court inNixon relied upon the fact that agricultural societies, pursuant to Neb.Rev.Stat. §§ 2-201 to 2-203 (Reissue 1983), receive public funds for support in the form of a tax levied by the county board. 217 Neb. at 38, 348 N.W.2d at 119. The Court stated that, `although a county agricultural society resembles a private corporation in some respects, the statutory provisions which grant such a society the right to receive support from the public revenue give it a public character.' Id. at 39, 348 N.W.2d at 119. Citing Neb.Rev.Stat. § 84-1409(1)(c) (Supp. 1983), which includes within the definition of public body `all independent boards, commissions, bureaus, committees, councils, subunits, Certificate of Need appeal panels, or any other bodies, now or hereafter created by Constitution, statute, or otherwise pursuant to law . . .', the Court concluded that agricultural societies are public bodies within this definition and therefore subject to the public meetings law.Id. at 39, 348 N.W.2d at 119-20.
The statutory provisions for the organization of county extension services are contained in Neb.Rev.Stat. §§ 2-1601
to 2-1607 (Reissue 1983). Section 2-1604 provides for a county election to be held on the question of whether an appropriation from the county general fund shall be made to support the county extension service. If a majority of votes cast in the election are in favor of granting the appropriation, this section requires the county board to set aside in the general fund an amount equal to the county extension service budget. This statutory scheme clearly provides a method by which county extension services are entitled to receive support from public funds. In holding county agricultural societies to be public bodies within the meaning of the public meetings law, the Nebraska Supreme Court inNixon emphasized the right to receive support from the public revenue gave such entities a public character.
Based on the rationale of the Supreme Court's decision in Nixon, supra, and the broad definition of `public body' contained in Neb.Rev.Stat. § 84-1409(1)(c) (Supp. 1983), we are of the opinion that county extension services are public bodies subject to the provisions of the public meetings law.
2. The provisions of the Political Subdivision Budget Limit Act are contained in Neb.Rev.Stat. §§ 77-3412 to77-3430 (Reissue 1981). Section 77-3423(1) provides, in pertinent part:
 . . . no governing body of any political subdivision
shall adopt a budget statement pursuant to section 23-925, or pursuant to the charter or ordinances of a city with a home rule charter, in which the anticipated combined receipts for the ensuing fiscal year exceeds an increase of seven per cent above the combined receipts budget base.
(Emphasis added).
Section 77-3415 provides the definition of the term `governing body' found in Neb.Rev.Stat. § 23-922 (Reissue 1983) shall be used for purposes of the Budget Limit Act. Section 23-922(1) provides `Governing body shall mean, . . . in the case of a county, the county board; . . . .'
In a previous opinion, this office concluded a county agricultural society was not a `political subdivision' subject to the provisions of the Political Subdivision Budget Limit Act. Report of Attorney General, 1979-80, Opinion No. 98, pg. 140. In reaching this conclusion, we noted that Nebraska statutes and case law do not provide a definition of the term `political subdivision' as it is used in the context of the Budget Limit Act. In that opinion, we stated the term `political subdivision' generally `denotes any subdivision of the state which has as its purpose carrying out functions of the state which are inherent necessities of government and have always been regarded as such by the public.' Report of Attorney General, 1979-80, Opinion No. 98, pg. 141 (citing Commissioner of Internal Revenue v.Shamberg's Estate, 144 F.2d 998 (2d Cir. 1944)).
While we recognize the Supreme Court in Nixon, supra, held county agricultural societies to be public bodies subject to the public meetings law, and we have concluded in our response to Question No. 1 that county extension services would also be public bodies for purposes of complying with the public meetings law, we nevertheless believe such entities are not `political subdivisions' of the state within the provisions of the Budget Limit Act. While these organizations do take on a public character by virtue of their receipt of support from public funds, bringing them within the broad definition of public body found in Neb.Rev.Stat. § 84-1409(1)(c) (Supp. 1983), we do not feel they can be characterized as carrying out the `inherent necessities of government' associated with the term `political subdivision'.
Furthermore, we note that both entities are subject to specific limitations on the amount of public funding they may receive under the statutory provisions authorizing their creation. Neb.Rev.Stat. §§ 2-201 to 2-203, 2-1604 (Reissue 1983). In State ex rel. Agricultural Extension Service ofGage County v. Miller, 182 Neb. 285, 154 N.W.2d 469
(1967), the Court held that, to the extent there was an inconsistency between the special statute creating the Agricultural Extension Service and the statute regarding the general budget law of the county, the special statute would control with respect to the Agricultural Extension Service's budget. Therefore, we believe the specific limitations on public funding these entities may receive pursuant to the special statutes authorizing their creation would in any event control over the general limitations contained in the Political Subdivision Budget Limit Act.
For the foregoing reasons, it is our opinion that neither county agricultural societies or county extension services constitute governing bodies of political subdivisions subject to the provisions of the Political Subdivision Budget Limit Act.
Very truly yours,
PAUL L. DOUGLAS Attorney General
L. Jay Bartel Assistant Attorney General
APPROVED:
Paul L. Douglas Attorney General